**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 9:25-80850-CIV- Artau/Reinhart**

SEDIGHEH ZOLFAGHARI,

                 Plaintiff,

      v.

UNITED STATES ARMY CORPS OF
ENGINEERS, *et al*.,

                Defendants.

## DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT

ADAM R.F. GUSTAFSON
Principal Deputy Assistant Attorney General

ALEXANDER M. PURPURO (FL #1025872)
GREGORY M. CUMMING (DC # 1018173)
U.S. Department of Justice
Environment & Natural Resources Div.
150 M Street, NE, Ste. 4.400
Washington, D.C. 20044-7611
Tel: (202) 353-5230 (Purpuro)
Tel: (202) 598-0414 (Cumming)
alexander.purpuro@usdoj.gov
gregory.cumming@usdoj.gov

*Attorneys for Defendants*

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ............................................................................................. ii

I.       INTRODUCTION ...............................................................................................1

II.      BACKGROUND .................................................................................................1

         A.       Legal Background ...................................................................................1

         B.       Factual Background .................................................................................3

III.     STANDARD OF REVIEW ..................................................................................4

IV.      ARGUMENT .......................................................................................................5

         A.       Plaintiff's APA Claims Must Be Dismissed As Untimely and For
                  Failing to Identify Any Final Agency Action That Can Be
                  Challenged Within the Statute of Limitations (Counts I and II) ............5

                  i. Plaintiff's Permit Challenges Are Barred By the Six Year Statute
                  of Limitations for Bringing an APA Claim. ...........................................6

                  ii. Plaintiff Fails to Identify Any Corps Final Action Beyond the
                  Permits That Meet the APA Requirement for Finality ...........................8

         B.       Plaintiff's Taking Claim Must Also Be Dismissed (Count III) ............10

V.       CONCLUSION...................................................................................................14

i

Defs.' Mot. to Dismiss | 9:25-80850-CIV-Artau/Reinhart

# TABLE OF AUTHORITIES

## CASES

*Am. United Life Ins. v. Martinez*,
  480 F.3d 1043 (11th Cir. 2007) ................................................................. 5

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ................................................................. 5, 6

*Bennet v. Spear*,
  520 U.S. 154 (1997) ................................................................. 7, 9, 10

*Bennett v. United States*,
  No. 23-cv-1140, 2024 WL 4005098 (S.D. Cal. Aug. 5, 2024) ................................................................. 12

*Boise Cascade Corp. v. United States*,
  296 F.3d 1339 (Fed. Cir. 2002) ................................................................. 13

*Broome v. U.S. Army Corps of Eng'rs*,
  No. 14-2413, 2015 WL 3505149 (E.D. La. June 3, 2015) ................................................................. 12

*Canal A Media Holding v. USCIS*,
  964 F.3d 1250 (11th Cir. 2020) ................................................................. 8

*Chaparro v. Carnival Corp.*,
  693 F.3d 1333 (11th Cir. 2012) ................................................................. 5

*Clayton Cnty. v. FAA*,
  887 F.3d 1262 (11th Cir. 2018) ................................................................. 9, 10

*Corner Post, Inc. v. Bd. of Governors of Fed. Rsrv. Sys.*,
  603 U.S. 799 (2024) ................................................................. 6, 8

*Cortez v. EEOC*,
  585 F. Supp. 2d 1273 (D.N.M. 2007) ................................................................. 12

*Crenshaw v. Lister*,
  556 F.3d 1283 (11th Cir. 2009) ................................................................. 7

*Darby Dev. Co. v. United States*,
  112 F.4th 1017 (Fed. Cir. 2024) ................................................................. 14

*Dawgs & Dingoes, LLC v. City of Pooler*,
  No. 4:22-cv-176, 2023 WL 6066457 (S.D. Ga. Sept. 18, 2023) ................................................................. 13

*Doe v. United States*,
  372 F.3d 1308 (Fed. Cir. 2004) ................................................................. 12

ii

Defs.' Mot. to Dismiss | 9:25-80850-CIV-Artau/Reinhart

*Dolan v. City of Tigard*,
  512 U.S. 374 (1994) ........................................................................................... 13

*EPA v. California ex rel. State Water Res. Control Bd.*,
  426 U.S. 200 (1976) ............................................................................................. 1

*Florida v. HHS*,
  739 F. Supp. 3d 1091 (M.D. Fla. 2024) ..............................................................11

*Glynn Env't Coal., Inc. v. Sea Island Acquisition, LLC*,
  146 F.4th 1080 (11th Cir. 2025) ........................................................................... 2

*Green v. Brennan*,
  578 U.S. 547 (2016) ............................................................................................. 6

*Gupta v. Walt Disney Co.*,
  No. 6:23-cv-1806, 2024 WL 3738825 (M.D. Fla. July 24, 2024) ...........................11

*In re Cline*,
  531 F.3d 1249 (10th Cir. 2008) .......................................................................... 12

*Kamaole Pointe Dev. LP v. Cnty. of Maui*,
  573 F. Supp. 2d 1354 (D. Haw. 2008) ................................................................ 10

*Koontz v. St. Johns River Water Mgmt. Dist.*,
  570 U.S. 595 (2013) ........................................................................................... 12

*La Grasta v. First Union Sec., Inc.*,
  358 F.3d 840 (11th Cir. 2004) .............................................................................. 6

*Lawrence v. Dunbar*,
  919 F.2d 1525 (11th Cir. 1990) ............................................................................ 5

*Lujan v. Nat'l Wildlife Fed'n*,
  497 U.S. 871 (1990) ............................................................................................. 5

*McElmurray v. Consol. Gov't of Augusta–Richmond Cnty.*,
  501 F.3d 1244 (11th Cir. 2007) ............................................................................ 5

*Nat'l Ass'n of Home Builders v. EPA*,
  786 F.3d 34 (D.C. Cir. 2015) ............................................................................... 2

*Nat'l Parks Conservation Ass'n v. Norton*,
  324 F.3d 1229 (11th Cir. 2003) ............................................................................ 9

*Nollan v. Cal. Coastal Comm'n*,
  483 U.S. 825 (1987) ........................................................................................... 13

iii

Defs.' Mot. to Dismiss | 9:25-80850-CIV-Artau/Reinhart

*Norman v. United States,*
  63 Fed. Cl. 231 (2004) ............................................................................................. 13

*Penn Central Transportation Company v. City of New York,*
  438 U.S. 104 (1978) ................................................................................................. 13

*Sheetz v. County of El Dorado,*
  601 U.S. 267 (2024) ................................................................................................. 13

*Sierra Club v. U.S. Army Corps of Eng'rs,*
  464 F. Supp. 2d 1171 (M.D. Fla. 2006) ................................................................... 7

*Simanonok v. Simanonok,*
  918 F.2d 947 (Fed. Cir. 1990) ................................................................................ 12

*Stalley ex rel. U.S. v. Orlando Reg'l Healthcare Sys., Inc.,*
  524 F.3d 1229 (11th Cir. 2008) ................................................................................ 4

*Tabb Lakes, Ltd. v. United States,*
  10 F.3d 796 (Fed. Cir. 1993) ..................................................................................11

*Taylor v. United States,*
  959 F.3d 1081 (Fed. Cir. 2020) .............................................................................. 13

*United States v. Riverside Bayview Homes, Inc.,*
  474 U.S. 121 (1985) ................................................................................................11

*Wainberg v. Mellichamp,*
  93 F.4th 1221 (11th Cir. 2024) ................................................................................. 6

*White Oak Realty, LLC v. U.S. Army Corps of Eng'rs,*
  No. 13-4761, 2016 WL 355485 (E.D. La. Jan. 28, 2016) ...................................... 12

**STATUTES**

5 U.S.C. § 704 ............................................................................................................. 5, 8

5 U.S.C. § 706(2) ........................................................................................................... 6

28 U.S.C. § 1346(a)(2) .................................................................................................11

28 U.S.C. § 1491(a)(1) .................................................................................................11

28 U.S.C. § 1631 .......................................................................................................... 12

28 U.S.C. § 2401(a) .................................................................................................... 6, 8

33 U.S.C. §§ 1251-1387 ................................................................................................ 1

33 U.S.C. § 1251(a) ........................................................................................................... 1

33 U.S.C. § 1311(a) ........................................................................................................... 1

33 U.S.C. § 1344(a) ........................................................................................................... 1

33 U.S.C. § 1344(e) ........................................................................................................... 1

33 U.S.C. § 1344(e)(1) ....................................................................................................... 2

33 U.S.C. § 1362(6) ........................................................................................................... 1

33 U.S.C. § 1362(7) ........................................................................................................... 1

33 U.S.C. § 1362(12) ......................................................................................................... 1

**FEDERAL RULES**

Fed. R. Civ. P. 10(c) .......................................................................................................... 7

Fed. R. Civ. P. 12(b)(1) ..................................................................................................... 4

**CODE OF FEDERAL REGULATIONS**

33 C.F.R. § 330.1(b) .......................................................................................................... 2

33 C.F.R. § 330.1(c) .......................................................................................................... 2

33 C.F.R. § 330.1(e)(2) ...................................................................................................... 2

33 C.F.R. § 330.4(a) .......................................................................................................... 2

33 C.F.R. § 330.6(a)(1) ...................................................................................................... 2

33 C.F.R. § 331.2 ............................................................................................................... 3

**FEDERAL REGISTER**

61 Fed. Reg. 65874 (Dec. 13, 1996) ................................................................................. 3

65 Fed. Reg. 16486 (Mar. 28, 2000) ................................................................................. 3

72 Fed. Reg. 11092 (Mar. 12, 2007) ................................................................................. 2

v

Defs.' Mot. to Dismiss | 9:25-80850-CIV-Artau/Reinhart

## I.      INTRODUCTION

Defendants United States Army Corps of Engineers (the "Corps"), Lieutenant General William H. Graham, and Alisa Zarbo hereby move this Court to dismiss Plaintiff's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(1) and (6).

Plaintiff Sedigheh Zolfaghari ("Plaintiff") brings an array of claims against the Corps seeking to overturn Clean Water Act permit conditions that have been in place since 2009.  But her Complaint suffers from a fundamental flaw—it is untimely.  Plaintiff brings this action more than ten years after the statute of limitations for her claims expired.  Further, Plaintiff fails to identify any final agency action that can be challenged under the Administrative Procedure Act ("APA").  And her claims under the Fifth Amendment are otherwise subject to dismissal for a variety of other reasons.  For these reasons, Plaintiff's Amended Complaint should be dismissed with prejudice.

## II.     BACKGROUND

### A.  Legal Background

The Clean Water Act ("CWA"), 33 U.S.C. §§ 1251-1387, is a comprehensive statute designed "to restore and maintain the chemical, physical, and biological integrity of the Nation's waters."  33 U.S.C. § 1251(a). To accomplish this goal, the CWA prohibits the discharge of any "pollutant" into "navigable waters" unless authorized by a permit under the Act. *Id.* §§ 1311(a), 1362(6), (7), (12).  *See generally EPA v. California ex rel. State Water Res. Control Bd.*, 426 U.S. 200, 204-06 (1976).  Congress has defined "pollutant" broadly under the CWA. For example, "pollutant" is defined to include, inter alia, "dredged spoil," "rock, sand," and "biological materials."  33 U.S.C. § 1362(6).   "[N]avigable waters" is defined to encompass all "waters of the United States," including the "territorial seas."  *Id.* § 1362(7).

Section 404 of the CWA authorizes the Secretary of the Army, acting through the Corps, to issue permits for discharges of dredged or fill materials into waters of the United States at specified disposal sites.  *Id.* § 1344(a).  The Corps may authorize activities either through an individual permit, *id.* § 1344(a), or through a "general" permit covering a category of activities issued on a state, regional, or nationwide basis, *id.* § 1344(e).  The Corps may issue a general permit authorizing a category of activities where the Corps determines that such activities "are similar in nature, will cause only minimal adverse environmental effects when performed

1

separately, and will have only minimal cumulative adverse effect on the environment." *Id.* § 1344(e)(1).

Pursuant to its authority to issue general permits, the Corps issues nationwide permits ("NWP") which "are designed to regulate with little, if any, delay or paperwork certain activities having minimal impacts." 33 C.F.R. § 330.1(b). An activity may be authorized under a particular NWP "only if that activity and the permittee satisfy *all of the NWP's terms and conditions*." *Id.* § 330.1(c) (emphasis added); *see also id.* § 330.4(a). Authorization under an NWP is not always automatic, and in some cases a prospective permittee must first obtain confirmation from the Corps that the planned activity complies with the terms and conditions of the NWP. *Id.* § 330.6(a)(1).

Relevant to this matter is the 2007 version of NWP 29, which authorized impacts to waters of the United States connected with construction activities that are necessary for residential development. 72 Fed. Reg. 11092, 11123 (Mar. 12, 2007). Permittees desiring to proceed with work pursuant to NWP 29 were required to submit pre-construction notification to the District Engineer in the relevant Corps district before beginning work. *Id.* at 11124. District Engineers have the authority to impose case-specific conditions on an NWP authorization to ensure that the authorized work will result in minimal adverse effects. 33 C.F.R. § 330.1(e)(2). This may include a requirement to carry out compensatory mitigation to offset wetland impacts and to ensure that the net adverse effects on the aquatic environment are minimal. 72 Fed. Reg. at 11125, 11193. Under the 2007 NWPs, compensatory mitigation was required for all wetland losses that exceed 1/10 acre and require pre-construction notification. *Id.* And compensatory mitigation could be required for losses of less than 1/10 acre at the District Engineer's discretion. *Id.*

In determining whether to seek authorization to conduct work on their property, "[l]andowners who anticipate that they might need a permit to dredge or fill their land may 'solicit a written, site-specific Jurisdictional Determination . . . from the Corps' to establish whether the Clean Water Act applies to their property." *Glynn Env't Coal., Inc. v. Sea Island Acquisition, LLC*, 146 F.4th 1080, 1083 (11th Cir. 2025) (quoting *Nat'l Ass'n of Home Builders v. EPA*, 786 F.3d 34, 37 (D.C. Cir. 2015)). At the applicant's request, the Corps can either issue (1) an approved jurisdictional determination, which is an appealable written Corps decision confirming the presence or absence of waters of the United States on a parcel, and the limits of

2

Defs.' Mot. to Dismiss | 9:25-80850-CIV-Artau/Reinhart

any such waters, or (2) a preliminary jurisdictional determination, which only indicates "that there may be waters of the United States on a parcel" and is "advisory in nature and may not be appealed."  33 C.F.R. § 331.2.

### B. Factual Background[1]

In 2002, Plaintiff purchased a residential property in Lake Worth, Florida.  Am. Compl.[2] ¶ 31.  Before she purchased her property, the Corps completed a jurisdictional determination[3] on the property which "revealed the majority of the lot has wetlands present" and which included a map depicting the extent of wetlands.  *Id.* ¶ 35; Ex. 4.  The jurisdictional determination advised the then-property-owner that the determination was valid for five years.  Ex. 4.  When Plaintiff purchased the property, the previous owner transferred to Plaintiff a Corps permit authorizing the filling of wetlands pursuant to NWP 26[4] for the purposes of constructing a single-family residence.  Am. Compl. ¶ 38; Ex. 6.  Plaintiff constructed her home pursuant to the terms of the Corps permit and a Palm Beach County construction permit.  Am. Compl. ¶¶ 41-42.

In September 2008, Plaintiff contacted the Corps to seek authorization to construct a guest house in the unimpacted wetlands on her property.  *Id.* ¶¶ 43-44; Ex. 5.  In connection with this request, the Corps completed a Preliminary Jurisdictional Determination dated October 3, 2008, identifying 2.5 acres of wetlands at Plaintiff's property (the "2008 PJD").[5]  The 2008 PJD advised Plaintiff of her right to obtain an approved jurisdictional determination, which could be appealed.  The 2008 PJD further advised Plaintiff that, by accepting any permit authorization based on that determination, she was accepting the use of a preliminary jurisdictional determination, agreeing that any wetlands on her property were jurisdictional waters, and

---

[1]     For purposes of this Motion to Dismiss, Defendants rely on Plaintiff's factual allegations as pleaded.  Defendants do not otherwise admit those allegations and reserve their right to file a responsive pleading in the event this Motion is denied.

[2]     Citations to "Am. Compl." refer to Plaintiff's Amended Complaint, Dkt. No. 25, and citations to "Ex. [No.]" refer to the exhibits attached to Plaintiff's Amended Complaint.

[3]     Regulations differentiating between "approved" and "preliminary" jurisdictional determinations were not issued until March 28, 2000, 65 Fed. Reg. 16486, 16493 (Mar. 28, 2000), shortly after the referenced jurisdictional determination was done.

[4]     NWP 26 authorized discharges of fill material into headwaters and isolated wetlands provided the discharge met certain criteria.  61 Fed. Reg. 65874, 65916 (Dec. 13, 1996).

[5]     Plaintiff does not reference the 2008 PJD in her Complaint, nor did she attach it to her Complaint as she did the 2000 jurisdictional determination, the 2009 Permit, and other documents from the Corps.  Defendants discuss this determination to provide the Court with general context and background, but do not rely on it for purposes of this Motion.

waiving her right to challenge that jurisdiction in a later federal court proceeding.  Plaintiff signed the 2008 PJD on October 18, 2008.

On January 6, 2009, the Corps issued a letter advising Plaintiff that her project was authorized by NWP 29.  Ex. 5.  On April 1, 2009, in response to Plaintiff's subsequent application to modify the January 6, 2009 permit verification, the Corps issued a superseding letter advising Plaintiff that her project was authorized by NWP 29 (hereinafter, the "2009 Permit").  Ex. 3.  The 2009 Permit allowed for permanent impacts to 0.5 acres of jurisdictional wetlands and set forth "special conditions" which required Plaintiff to "avoid the remaining 2.0 acre(s) of onsite wetlands."  *Id.*  The special conditions further outlined specific onsite mitigation actions that Plaintiff was required to undertake with respect to those two acres and stated that "[t]he onsite compensatory mitigation areas shall be preserved in perpetuity in accordance with the special conditions of this permit."  *Id.*  Plaintiff then "constructed the guest house in compliance with the Corps' permit terms."  Am. Compl. ¶ 45.

In 2024, Plaintiff contacted the Corps, seeking permission to fill two acres of the onsite compensatory mitigation wetlands.  *Id.* ¶ 46.  While visiting the property, the Corps observed that Plaintiff had already filled portions of the onsite mitigation area she was required to preserve under the 2009 Permit and provided Plaintiff with a Notice of Noncompliance.  Ex. 1.  After Plaintiff engaged in further communications with the Corps, including requesting that the Corps complete an approved jurisdictional determination with respect to her property, *see* Am. Compl. ¶¶ 49-58, Plaintiff filed an initial Complaint asserting claims under the APA, the Fifth Amendment, and common law contract, Dkt. No. 1.  The Corps moved to dismiss that Complaint, Dkt. No. 12, and, on October 8, 2025, Plaintiff filed an Amended Complaint which removed the contract claims.

## III.    STANDARD OF REVIEW

A motion to dismiss for lack of subject matter jurisdiction must be granted if the court lacks the statutory authority to hear and decide the dispute.  Fed. R. Civ. P. 12(b)(1).  "A defendant can move to dismiss a complaint under Rule 12(b)(1) for lack of subject matter jurisdiction by either facial or factual attack."  *Stalley ex rel. U.S. v. Orlando Reg'l Healthcare Sys., Inc.*, 524 F.3d 1229, 1232 (11th Cir. 2008).  "A 'facial attack' on the complaint 'require[s] the court merely to look and see if [the] plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in his complaint are taken as true for the purposes of the

4

Defs.' Mot. to Dismiss | 9:25-80850-CIV-Artau/Reinhart

motion.'" *McElmurray v. Consol. Gov't of Augusta–Richmond Cnty.*, 501 F.3d 1244, 1251 (11th Cir. 2007) (quoting *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990)).  A motion to dismiss is facial where the court need only consider "the complaint and the attached exhibits." *Id.*

To survive a Rule 12(b)(6) motion, a complaint must contain sufficient factual matter to provide plausible grounds showing its legal entitlement to the requested relief.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  In reviewing a complaint under Rule 12(b)(6), "a court must view a complaint in the light most favorable to the plaintiff and accept all of the plaintiff's well-pleaded facts as true.  *Am. United Life Ins. v. Martinez*, 480 F.3d 1043, 1066 (11th Cir. 2007).  However, a Plaintiff must present "more than labels and conclusions," and a "formulaic recitation of the elements of a cause of action" will not suffice.  *Twombly*, 550 U.S. at 555.  "[I]f allegations are indeed more conclusory than factual, then the court does not have to assume their truth."  *Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1337 (11th Cir. 2012).

## IV.   ARGUMENT

### A.   Plaintiff's APA Claims Must Be Dismissed as Untimely and For Failing to Identify Any Final Agency Action That Can Be Challenged Within the Statute of Limitations (Counts I and II).

The APA provides for judicial review of a "final agency action for which there is no other adequate remedy."  5 U.S.C. § 704.  Thus, at a minimum, Plaintiff must identify what "final agency action" she contends this Court can review.  The Amended Complaint fails at accomplishing this basic requirement.  The headings for both Counts I and II vaguely refer to "[t]he Corps' Assertion of Jurisdiction," a descriptor which fails to specify what purported final agency action Plaintiff seeks to challenge.  The numbered paragraphs do no better, generally characterizing the CWA and related jurisprudence and similarly alleging that the Corps was "asserting authority."  *See, e.g.*, Am. Compl. ¶¶ 61-82.

Plaintiff's APA claims should be dismissed for failure to plead with specificity what final action Plaintiff seeks to challenge.  *See Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 882 (1990) ("the person claiming a right to sue must identify some 'agency action' that affects him in the specified fashion").

The APA claims should likewise be dismissed, because the statute of limitations bars any challenge to the only Corps final actions discussed in the Amended Complaint.  And none of the

other referenced communications between the Corps and Plaintiff rise to the level of a final agency action.

       i. *Plaintiff's Permit Challenges Are Barred By the Six Year Statute of Limitations for Bringing an APA Claim.*

Plaintiff's APA claims, at bottom, seek to challenge CWA "permits" authorizing the discharge of fill material associated with construction activities on her property.  Relevant here, the APA authorizes courts to "hold unlawful and set aside agency action, findings, and conclusions" for an enumerated set of bases.  5 U.S.C. § 706(2).  Plaintiff's Amended Complaint asks this Court to "set aside" the "permits at issue."  *See* Am. Compl. ¶¶ 70, 82.  But this challenge is untimely because it comes sixteen years after the Corps permits became final—well beyond the statute of limitations for claims arising under the APA.

The "catch-all" statute of limitations for claims against the United States provides that "every civil action commenced against the United States shall be barred unless the complaint is filed within six years after the right of action first accrues."  28 U.S.C. § 2401(a).  This statute of limitations applies to claims brought under the APA.  *See Corner Post, Inc. v. Bd. of Governors of Fed. Rsrv. Sys.*, 603 U.S. 799, 807 (2024).  Although "'[a] statute of limitations bar is an affirmative defense,' and a plaintiff is 'not required to negate an affirmative defense in [its] complaint,'" a dismissal based on this defense "is proper [] where it is 'apparent from the face of the complaint that the claim is time-barred.'"  *Wainberg v. Mellichamp*, 93 F.4th 1221, 1224 (11th Cir. 2024) (quoting *La Grasta v. First Union Sec., Inc.*, 358 F.3d 840, 845 (11th Cir. 2004), *abrogated on other grounds by Twombly*, 550 U.S. at 570).

It is clear from the face of the Amended Complaint that the statute of limitations on Plaintiff's cause of action under the APA accrued well over six years before she filed this lawsuit.  The Supreme Court in *Corner Post* recently examined "accrual" in the context of a claim challenging an agency action.  *Corner Post*, 603 U.S. at 809.  The Court held that "[a] right of action 'accrues' when the plaintiff has a 'complete and present cause of action'—*i.e.*, when she has the right to 'file suit and obtain relief.'"  *Id.* (quoting *Green v. Brennan*, 578 U.S. 547, 554 (2016)).  With respect to the APA, a "plaintiff does not have a complete and present cause of action until she suffers an injury from final agency action, so the statute of limitations does not begin to run until she is injured."  *Id.*

6

Defs.' Mot. to Dismiss | 9:25-80850-CIV-Artau/Reinhart

As discussed, Plaintiff asks this Court to set aside her "permits." The Complaint only identifies two "permits" that Plaintiff alleges the Corps issued. The first is "a pre-existing transferable Corps permit authorizing the construction of a single-family home and stating the planned construction complied with the terms of NWP 26," which was issued on October 26, 2000 (the "2000 Permit"). Am. Compl. ¶ 38. And the second is the 2009 Permit, which authorized Plaintiff's request to construct a guest house on her property and imposed special conditions requiring plaintiff to conduct on-site mitigation in compliance with NWP 29 and General Condition 20 of the 2007 Nationwide Permits. *See id.* ¶¶ 43-45; Ex. 3; Ex. 5. The 2009 Permit was initially issued on January 6, 2009, Ex. 5 at 1, and modified on April 1, 2009, Ex. 3 at 1.[6]

Plaintiff's APA claims with respect to both permits accrued well over six years before she filed this lawsuit because the permits (1) constituted a final agency action that (2) allegedly injured Plaintiff over six years before she filed this lawsuit. Plaintiff had a complete and present cause of action to challenge the 2000 Permit by 2003 and the 2009 Permit by April 1, 2009.

The issuance of each permit was a "final agency action," providing Plaintiff with a cause of action under the APA Section 704. Courts use a two-part test to determine whether an agency action is "final" under the APA. "First, the action must mark the consummation of the agency's decisionmaking process—it must not be of a merely tentative or interlocutory nature. And second, the action must be one by which rights or obligations have been determined, or from which legal consequences will flow." *Bennet v. Spear*, 520 U.S. 154, 177-78 (1997) (quotations and citations omitted). The 2000 and 2009 Permits satisfy both these prongs, marking the conclusion of the agency's decisionmaking process and determining Plaintiff's rights and obligations with respect to her ability to carry out work in compliance with the CWA. *See Sierra Club v. U.S. Army Corps of Eng'rs*, 464 F. Supp. 2d 1171, 1212 n.63 (M.D. Fla. 2006) (noting that analogous authorizations for projects under a regional general permit are reviewable final agency actions under the APA).

Any "injury" Plaintiff may have suffered with respect to the 2000 Permit occurred, at the latest, when she purchased the subject property and the prior owner transferred the permit to her.

---

[6]     Plaintiff's exhibits to her Complaint are part of her pleadings and may be considered by the Court in ruling on this motion. Fed. R. Civ. P. 10(c); *Crenshaw v. Lister*, 556 F.3d 1283, 1291 (11th Cir. 2009).

Although the Complaint does not specify when this occurred, Plaintiff alleges that she was in possession of the property in 2003.  *See* Am. Compl. ¶ 41 (alleging that Plaintiff obtained a county permit to build a home on her property in 2003).  Plaintiff's purported "injury" from that permit—i.e., the requirement that she construct her home in compliance with the conditions of the permit—thus occurred in 2003 and Plaintiff had until 2009 to bring an APA claim seeking review of that permit.[7]

As to the 2009 Permit, Plaintiff alleges that the onsite mitigation conditions requiring her to avoid impacts to and preserve two acres of wetlands on her property caused her injury.  Am. Compl. ¶¶ 69 (contending that the special conditions injured Plaintiff by prohibiting her "full use and enjoyment" of her property and "continuing to hold [Plaintiff] responsible for rewilding and other environmental mitigation activities on the property"), 92 (complaining that the same requirements have "saddled Plaintiff with an unconstitutional burden on her right to use her property").  These conditions went into effect on April 1, 2009.  Ex. 3.  At that point, Plaintiff was purportedly injured and could have raised any claim she had under the APA with respect to the 2009 Permit and the associated special conditions.  The work she wished to undertake was authorized, subject to the mitigation requirements she contends caused her injury.

Plaintiff's APA claims under Counts I and II are therefore time barred.  As the Supreme Court articulated in *Corner Post*, a litigant has until six years after his or her claim *first* accrues to bring an APA claim against the United States.  *Corner Post*, 603 U.S. at 808 (quoting 28 U.S.C. § 2401(a)).  Plaintiff's claim with respect to the latest permit accrued on April 1, 2009, and, thus, she had until April 1, 2015 to challenge that permit under the APA.  Because she filed this lawsuit on July 7, 2025, more than ten years after the statutory deadline, her claims under the APA should be dismissed with prejudice.

> ii.  *Plaintiff Fails to Identify Any Corps Final Action Beyond the Permits That Meet the APA Requirement for Finality.*

To the extent Plaintiff may contend she is not challenging the permits under Counts I and II, then those claims should be dismissed because the Complaint fails to identify any other "final agency action.".  *See Corner Post*, 603 U.S. at 808 ("[J]udicial review is available only for 'final agency action.'") (citing 5 U.S.C. § 704); *Canal A Media Holding v. USCIS*, 964 F.3d 1250, 1255

---

[7]      Notably, Plaintiff does not allege she is presently subject to any ongoing obligations under 2000 Permit.

(11th Cir. 2020) (dismissal for lack of final agency action "is a dismissal for lack of subject-matter-jurisdiction").  The only other Corps activities alleged in the Complaint are a 2024 notice of noncompliance and communications relating to Plaintiff's desire to impact the portions of her property subject to the 2009 Permit mitigation conditions.  *See* Am. Compl. ¶¶ 48, 52-54, 56.

The notice of noncompliance is, on its face, nonfinal and cannot be challenged under the APA.  The letter advises Plaintiff of the preexisting terms of her 2009 Permit and states that a Corps site inspection "indicat[ed]" that she had not complied with her permit conditions and makes clear that she is only "alleged" to be in violation of the permit.  Ex. 1.  The letter further makes clear that the Corps was still "determin[ing] the most appropriate enforcement action to address the alleged violation."  *Id.*  The notice of noncompliance therefore does not meet the conditions for finality under *Bennett v. Spear*, 520 U.S. 154 (1997).  The letter is tentative and does not "mark the consummation" of the Corps' decisionmaking process because it only alleges Plaintiff to have been in violation of her permit and expressly states that the Corps had not reached a final decision as to handling of the alleged violation.  *See Clayton Cnty. v. FAA*, 887 F.3d 1262, 1269 (11th Cir. 2018) (holding that FAA letters were not final where the letter did not "conclusively determine[]" that the recipient was in violation of the law).  Indeed, by the language of the letter "[i]t is 'beyond any doubt that further administrative action' is required before [Plaintiff] face[s] actual consequences."  *See id.* (quoting *Nat'l Parks Conservation Ass'n v. Norton*, 324 F.3d 1229, 1238 (11th Cir. 2003)).  Nor does the notice impose any legal obligation or consequence on Plaintiff.

The other Corps communications with Plaintiff referenced in the Complaint are likewise not final agency actions subject to judicial review.  That correspondence merely recognizes that the 2009 Permit conditions remain in effect, and that, if Plaintiff wishes to modify those conditions, she needs to submit a request for permit modification.[8]  *See* Ex. 2 (proposing to "explore the option of obtaining credits from a mitigation bank to offset the impact" of Plaintiff's proposal); Ex. 3 ("We understand that you seek to impact the remaining 2.0 acres of wetlands on your property, but we have not received a permit application or a request for modification of your existing permit . . . .").  Simply noting the requirements set forth under a prior permit and

---

[8]    Plaintiff has since submitted a request for modification that is pending with the Corps. Because Plaintiff's Complaint does not contain any allegations regarding that request, Defendants do not address it in this Motion.

9

Defs.' Mot. to Dismiss | 9:25-80850-CIV-Artau/Reinhart

the steps Plaintiff needs to take to request further action from the Corps is not a "consummation" of any decisionmaking process, nor is it an action "by which rights or obligations have been determined, or from which legal consequences will flow." *Bennet*, 520 U.S. at 177-78 (citation modified). The suggestion that Plaintiff submit a request for modification is plainly not a final agency action, as it contemplates a request by Plaintiff and further proceedings from the Corps before any determination regarding modification is reached. And simply restating the 2009 Permit conditions cannot be an independent final agency action because it does not alter Plaintiff's legal obligations or articulate a new policy on behalf of the Corps. *See Clayton Cnty.*, 887 F.3d at 1266-67 ("An agency's restatement of an already existing policy or interpretation does not, on its own, determine any rights or obligations and imposes no legal consequences."). The requirement that Plaintiff mitigate portions of her property derived from the 2009 Permit, not any subsequent Corps correspondence. In other words, that correspondence "left the world just as it found it." *See id.*

And to the extent Plaintiff alleges that any "refus[al] to provide a jurisdictional determination" for her property constitutes the challenged Corps action, *see* Am. Compl. ¶ 57, such allegations do not provide an avenue for review. In alleging that the Corps "refused" to conduct a jurisdictional determination at her property, the Amended Complaint cites a February 21, 2025, letter from the Corps to Plaintiff. *See id.* ¶ 56-57 That letter, however, simply acknowledges that Plaintiff asked the Corps to conduct a jurisdictional determination and as just discussed, outlines an avenue for Plaintiff to request modification. *See* Ex. 3 (Feb. 21, 2025, Letter). The Amended Complaint fails to identify any final agency action as to her request for a jurisdictional determination that is subject to challenge.

Accordingly, Plaintiff's APA claims should be dismissed.

**B. Plaintiff's Taking Claim Must Also Be Dismissed (Count III).**

For the following three reasons, Plaintiff's Count III, asserting a taking under the Fifth Amendment, should be dismissed.

*First*, Plaintiff's takings claim is time-barred or, alternatively, unripe.[9] If Plaintiff's claim is read to allege that the Corps' imposition of mitigation conditions as part of issuance of her

---

[9]    To the extent Plaintiff's claim does not arise under the Little Tucker Act, it either fails to state a cause of action or is time barred for reasons discussed above with respect to her Administrative Procedure Act claims. *See Kamaole Pointe Dev. LP v. Cnty. of Maui*, 573 F.

permit constituted a taking, then her claim comes too late, given a six-year statute of limitations applies to claims brought under the Little Tucker Act.  *See Gupta v. Walt Disney Co.*, No. 6:23-cv-1806, 2024 WL 3738825, at *5 (M.D. Fla. July 24, 2024) (explaining that the six-year statute of limitations under 28 U.S.C. § 2401(a) applies to claims brought under the Little Tucker Act); *see also Florida v. HHS*, 739 F. Supp. 3d 1091, 1107 n.8 (M.D. Fla. 2024).  Her permit was issued on April 1, 2009, more than six years before she filed her initial Complaint.

If Plaintiff instead is attempting to challenge a perceived failure by the Corps to modify her earlier permit, as discussed in the preceding section, that process is not yet final, given she admits the Corps explained that she would first need to apply for such a modification and the Corps has not yet made any decision with respect to such a request. Am. Compl. ¶ 58; *see also* Ex. 3 at 1-2.  Thus, such a claim is unripe, given that "[o]nly when a permit is denied and the effect of the denial is to prevent 'economically viable' use of the land in question can it be said that a taking has occurred." *United States v. Riverside Bayview Homes, Inc.*, 474 U.S. 121, 127 (1985); *see also Tabb Lakes, Ltd. v. United States*, 10 F.3d 796, 800-01 (Fed. Cir. 1993) ("[T]he cease and desist order, while stopping the filling of wetlands, specifically left the door open to development by obtaining a permit.  That type of regulatory action has been unequivocally held not to effect a taking.").  Indeed, Plaintiff notably does not allege the Corps has denied her modification request or initiated enforcement action.  *See* Am. Compl. ¶¶ 48-58.

*Second*, even if Plaintiff's claim were timely and ripe, it either: (1) exceeds the Little Tucker Act's monetary threshold such that jurisdiction properly lies, if at all, with the Court of Federal Claims; or (2) impermissibly requests only nominal damages as a tacit attempt to obtain injunctive relief under the Little Tucker Act.  *See id*. ¶ 59.  As to the former, and by way of background, the United States' waiver of sovereign immunity for Fifth Amendment takings claims is contained in the Tucker Act and the Little Tucker Act.  The Tucker Act states, in relevant part, that "[t]he United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded . . . upon the Constitution …."  28 U.S.C. § 1491(a)(1).  The Little Tucker Act, in turn, provides concurrent jurisdiction to the federal district courts over claims "not exceeding $10,000 in amount[.]"  28 U.S.C. § 1346(a)(2).

---

Supp. 2d 1354, 1366 (D. Haw. 2008) (rejecting the "proposition that there exists a *Nollan/Dolan*-based challenge outside of the takings context.").

Thus, "district courts lose their Little Tucker Act jurisdiction once the amount claimed accrues to more than $10,000." *Simanonok v. Simanonok*, 918 F.2d 947, 950 (Fed. Cir. 1990).

Plaintiff fails to meet her burden to prove she seeks just compensation of no more than $10,000. *See Cortez v. EEOC*, 585 F. Supp. 2d 1273, 1288 (D.N.M. 2007) ("A plaintiff attempting to invoke the subject matter of the federal district courts bears the burden to establish his or her claim does not exceed the $10,000.00 jurisdictional limit established by the Little Tucker Act."). For example, if Plaintiff seeks recovery of the costs of the mitigation measures, Am. Compl. ¶ 44, she provides no factual allegations verifying such recovery would amount to less than $10,000. *See, e.g.*, *Broome v. U.S. Army Corps of Eng'rs*, No. 14-2413, 2015 WL 3505149, at *3 (E.D. La. June 3, 2015) ("For the Court to sustain jurisdiction over this claim under the Little Tucker Act, Plaintiff[s] must expressly limit the amount of damages to $10,000.").[10]

As to the latter, a claim for "nominal damages" "fails to allege the monetary relief sought such that the Court can determine whether it has subject matter jurisdiction to hear the claims" under the Little Tucker Act. *Bennett v. United States*, No. 23-cv-1140, 2024 WL 4005098, at *20 (S.D. Cal. Aug. 5, 2024). Said differently, the Court should not permit Plaintiff to shoehorn in a claim for declaratory relief under the guise of a taking brought under the Fifth Amendment. *See Doe v. United States*, 372 F.3d 1308, 1315 (Fed. Cir. 2004) (finding no jurisdiction where "plaintiff was not seeking whatever compensation she was entitled to at the time the government allegedly took property that she allegedly had interests in."). To that end, one court has explained that where "[p]laintiffs' claims neither directly nor indirectly seek payment from the United States . . . their claims fall outside the Tucker Act's grant of jurisdiction." *White Oak Realty, LLC v. U.S. Army Corps of Eng'rs*, No. 13-4761, 2016 WL 355485, at *3 (E.D. La. Jan. 28, 2016); *see also Koontz v. St. Johns River Water Mgmt. Dist.*, 570 U.S. 595, 609 (2013) ("whether money damages are available is not a question of federal constitutional law but of the cause of action—whether state or federal—on which the landowner relies.").

---

[10]     To the extent Plaintiff seeks compensation exceeding the Little Tucker Act's monetary threshold, this Court has discretion to transfer claims that belong in the Court of Federal Claims to that court under 28 U.S.C. § 1631. However, such a transfer would be futile here and therefore not "in the interest of justice," *In re Cline*, 531 F.3d 1249, 1251 (10th Cir. 2008), because Plaintiff's claim is subject to dismissal for the reasons stated in this section.

*Third*, Count III fails to state a claim upon which relief can be granted.  Plaintiff appears to characterize her claim as challenging mitigation requirements attendant to her permit as "unconstitutional condition[s]." Am. Compl. ¶ 91.  But that doctrine applies to "a requirement that [a plaintiff] deed portions of the property to the" government, rather than "conditions" that are "simply a limitation on the use petitioner might make of her own parcel." *Dolan v. City of Tigard*, 512 U.S. 374, 385 (1994).  Said differently, Plaintiff provides no allegations the Corps required her to "give up a constitutional right . . . in exchange for a discretionary benefit conferred by the government where the benefit sought has little or no relationship to the property." *Id.*  Instead, Plaintiff challenges the type of "conditions" that "further a 'legitimate police power purpose," which "do not entitle the landowner to compensation even if they require her to convey a portion of her property to the government." *Sheetz v. County of El Dorado*, 601 U.S. 267, 274 (2024); *see also Nollan v. Cal. Coastal Comm'n*, 483 U.S. 825, 836 (1987) (the "assumed power to forbid construction . . . must surely include the power to condition construction upon some concession by the owner, even a concession of property rights, that serves the same end.").

Alternatively, if what Plaintiff challenges is simply the requirement that she obtain a permit in the first instance, her claim is facially insufficient, as she lacks a property interest in freedom from government regulation writ large.  *See Boise Cascade Corp. v. United States*, 296 F.3d 1339, 1350 (Fed. Cir. 2002) ("[T]he mere imposition of a permitting requirement" "cannot give rise to a compensable taking.").  Further, Plaintiff fails to allege facts supporting a partial regulatory taking under the framework set out in *Penn Central Transportation Company v. City of New York*, 438 U.S. 104 (1978). To survive a motion to dismiss a complaint must allege facts sufficient to satisfy each of those factors.  *See Taylor v. United States*, 959 F.3d 1081, 1090 (Fed. Cir. 2020) (finding that where, "on the allegations of [the] complaint," "each of the *Penn Central* factors weighs strongly against finding a regulatory taking," the claim "cannot succeed as a matter of law"); *see also Dawgs & Dingoes, LLC v. City of Pooler*, No. 4:22-cv-176, 2023 WL 6066457, at *5 (S.D. Ga. Sept. 18, 2023).  Plaintiff's Complaint ignores those factors.  In particular, she fails to allege any of the Corps' actions are consistent with a taking, given the "government has a legitimate public welfare obligation to preserve wetlands and . . . the unnecessary destruction of wetlands violates environmental laws and is contrary to public policy." *Norman v. United States*, 63 Fed. Cl. 231, 285 (2004).

13

Defs.' Mot. to Dismiss | 9:25-80850-CIV-Artau/Reinhart

As such, even if timely, the Court should dismiss Plaintiffs' claim.[11]

## V.      CONCLUSION

For the reasons stated in this Motion, the Court should dismiss Plaintiff's Complaint with prejudice.

DATED:  December 2, 2025                    Respectfully submitted,


                                           ADAM R.F. GUSTAFSON
                                           Principal Deputy Assistant Attorney General

                                           /s/ Alexander M. Purpuro
                                           ALEXANDER M. PURPURO (FL #1025872)
                                           GREGORY M. CUMMING (DC #1018173)
                                           U.S. Department of Justice
                                           Environment & Natural Resources Div.
                                           150 M Street, NE, Ste. 4.400
                                           Washington, D.C. 20044-7611
                                           Tel: (202) 353-5230 (Purpuro)
                                           Tel: (202) 598-0414 (Cumming)
                                           alexander.purpuro@usdoj.gov
                                           gregory.cumming@usdoj.gov

                                           *Attorneys for Defendants*

---

[11]      And to the extent Plaintiff contends that the Corps' exercise of jurisdiction over her property was unauthorized, then the Corps' actions could not constitute a taking at all.  *See Darby Dev. Co. v. United States*, 112 F.4th 1017, 1037 (Fed. Cir. 2024) (Dyk, J., dissenting) ("For well over 100 years the Supreme Court has recognized that unauthorized actions of a federal agency or federal official cannot create takings liability. If a government agent exceeds the authority conferred by the statute which grants it the power to act, then that action is unauthorized.")