# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF FLORIDA

### Case No. 9:25-80850-CIV-Artau/Reinhart

| | | |
|---|---|---|
| SEDIGHEH ZOLFAGHARI, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| UNITED STATES ARMY | ) | |
| CORPS OF ENGINEERS; | ) | **PLAINTIFF'S OPPOSITION** |
| LIEUTENANT GENERAL | ) | **TO DEFENDANTS'** |
| WILLIAM H. GRAHAM JR., in | ) | **MOTION TO DISMISS** |
| his official capacity as Commander | ) | **PLAINTIFF'S COMPLAINT** |
| and Chief of the Engineers of the | ) | |
| Corps; and ALISA ZARBO, in her | ) | |
| official capacity as Chief Engineer | ) | |
| of the Palm Beach Section of the | ) | |
| Corps, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ......................................................................................................... ii

INTRODUCTION ..................................................................................................................... 1

FACTS ...................................................................................................................................... 1

    A.  Legal Background .................................................................................................... 1

        1.  Clean Water Act ............................................................................................. 1

        2.  Wetlands and Waters of the United States ................................................. 2

        3.  *Sackett v. EPA* ................................................................................................. 3

    B.  Factual Background .............................................................................................. 4

STANDARD OF REVIEW ...................................................................................................... 7

ARGUMENT ........................................................................................................................... 8

I.  Plaintiff's APA Claims Are Timely ................................................................................. 8

    A.  The Acts Challenged Are Final Agency Actions Under Section 704 of the APA ............ 9

    B.  Assuming Arguendo That Plaintiff Was Injured in 2004 and 2009, Equitable Principles Require the Statute of Limitations Be Tolled Until Plaintiff Reasonably Became Aware of It Following the *Sackett* Decision in 2023 ........................................ 10

II.  Dr. Zolfaghari's Unconstitutional Conditions Claim Is Timely ............................................. 11

    A.  Plaintiff's Unconstitutional Conditions Claims Are Ripe and Within the Statute of Limitations ....................................................................................... 13

    B.  Unconstitutional Conditions Claims Do Not Require a Deeding Over or Complete Taking of Property ............................................................................... 15

    C.  The Tucker Act Does Not Defeat This Court's Jurisdiction ............................................. 17

CONCLUSION ....................................................................................................................... 18

# TABLE OF AUTHORITIES

**Page(s)**

### Cases

*Arellano v. McDonough*,
  598 U.S. 1 (2023) ...........................................................................................11

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007) ...........................................................................................7

*Bennett v. Spear*,
  520 U.S. 154 (1997) .........................................................................................10

*Boechler, P.C. v. Comm'r*,
  596 U.S. 199 (2022) .........................................................................................11

*Carey v. Piphus*,
  435 U.S. 247 (1978) .........................................................................................19

*Carpinteria Valley Farms, Ltd. v. Cnty. of Santa Barbara*,
  344 F.3d 822 (9th Cir. 2003) ...........................................................................16

*Corner Post, Inc. v. Bd. of Governors of Fed. Reserve Sys.*,
  603 U.S. 799 (2024) ...........................................................................................9

*Cummings v. Connell*,
  402 F.3d 936 (9th Cir. 2005) ...........................................................................19

*Dolan v. City of Tigard*,
  512 U.S. 374 (1994) .............................................................................12–13, 17

*Franklin v. Massachusetts*,
  505 U.S. 788 (1992) .........................................................................................10

*Georgia v. Wheeler*,
  418 F. Supp. 3d 1336 (S.D. Ga. 2019) .............................................................13

*Gibson v. Lynn Univ., Inc.*,
  504 F. Supp. 3d 1335 (S.D. Fla. 2020) ..............................................................7

*Hillcrest Property, LLP v. Pasco Cnty.*,
  915 F.3d 1292 (11th Cir. 2019) .......................................................................14

*Hunt v. Aimco Properties, L.P.*,
  814 F.3d 1213 (11th Cir. 2016) .........................................................................7

*Izaak Walton League of Am., Inc. v. Kimbell*,
  558 F.3d 751 (8th Cir. 2009) ...........................................................................11

*Kamaole Pointe Dev. LP v. Cnty. of Maui*,
  573 F. Supp. 2d 1354 (D. Haw. 2008) .............................................................17

*Koontz v. St. Johns River Water Mgmt. Dist.*,
  570 U.S. 595 (2013)..........................................................................12, 14–15, 17

*Lawrence v. Dunbar*,
  919 F.2d 1525 (11th Cir. 1990) ..................................................................8

*Lingle v. Chevron U.S.A., Inc.*,
  544 U.S. 528 (2005)...................................................................................14

*Lozano v. Montoya Alvarez*,
  572 U.S. 1 (2014).......................................................................................11

*Magnett v. Pelletier*,
  488 F.2d 33 (1st Cir. 1973).......................................................................19

*McCoy v. Dep't of Educ.*,
  No. 8:23-cv-1975, 2024 WL 3520709 (M.D. Fla. July 24, 2024).........11

*McElmurray v. Consol. Gov't of Augusta-Richmond Cnty.*,
  501 F.3d 1244 (11th Cir. 2007) ..................................................................7

*Megladon, Inc. v. Vill. of Pinecrest*,
  661 F. Supp. 3d 1214 (S.D. Fla. 2023) ............................................ *passim*

*National Parks Conservation Ass'n v. Norton*,
  324 F.3d 1229 (11th Cir. 2003) ................................................................11

*Nollan v. California Coastal Comm'n*,
  483 U.S. 825 (1987).......................................................................12, 14, 17

*Pakdel v. City & Cnty. of S.F.*,
  594 U.S. 474 (2021)...................................................................................15

*Penn Central Transportation Co. v. New York City*,
  438 U.S. 104 (1978)...................................................................................15

*Rapanos v. United States*,
  547 U.S. 715 (2006).....................................................................................3

*Sackett v. EPA*,
  598 U.S. 651 (2023)........................................................................ *passim*

*Schneider v. Cnty. of San Diego*,
  285 F.3d 784 (9th Cir. 2002) ....................................................................19

*Sheetz v. Cnty. of El Dorado*,
  601 U.S. 267 (2024)...................................................................................17

*Solid Waste Agency of N. Cook Cnty. v. U.S. Army Corps of Eng'rs*,
  531 U.S. 159 (2001).....................................................................................3

*Stavrianoudakis v. U.S. Fish and Wildlife Service*,
  108 F.4th 1128 (9th Cir. 2024) .................................................................19

iii

*Tabb Lakes, Ltd. v. United States*,
   10 F.3d 796 (Fed. Cir. 1993)..................................................................15

*United States v. Jackson*,
   390 U.S. 570 (1968)..................................................................................19

*United States v. Riverside Bayview Homes, Inc.*,
   474 U.S. 121 (1985)..............................................................................3, 15

*United States v. Wong*,
   575 U.S. 402 (2015)..................................................................................11

*Wilkins v. United States*,
   598 U.S. 152 (2023)..................................................................................11

*Williamson v. Tucker*,
   645 F.2d 404 (5th Cir. 1981) .....................................................................8

## United States Constitution

U.S. Const. amend. V..........................................................................12–14, 19

## Statutes

5 U.S.C. § 704.........................................................................................10

28 U.S.C. § 1346......................................................................................19

28 U.S.C. § 1491......................................................................................19

28 U.S.C. § 2401(a).................................................................9, 11–12, 16

28 U.S.C. § 2401(b)..................................................................................11

28 U.S.C. § 2409a(g)................................................................................12

33 U.S.C. § 1251 *et seq.*..................................................................... *passim*

33 U.S.C. § 1251(a)...............................................................................2, 14

33 U.S.C. § 1251(b)..................................................................................13

33 U.S.C. § 1311(a)....................................................................................2

33 U.S.C. § 1319(a)....................................................................................2

33 U.S.C. § 1344(a)....................................................................................2

33 U.S.C. § 1344(g)(1)...............................................................................2

33 U.S.C. § 1362(7)....................................................................................2

33 U.S.C. § 1362(12)(A).............................................................................2

## Rules

Fed. R. Civ. P. 12(b)(1) ...................................................................................................7

Fed. R. Civ. P. 12(b)(6) ...................................................................................................7

## Other Authorities

33 C.F.R. § 320.4 (1987) .................................................................................................12

33 C.F.R. § 326.5 ..............................................................................................................5

33 C.F.R. § 326.6 ..............................................................................................................5

33 C.F.R. § 331.2 ..............................................................................................................9

40 C.F.R. § 230.3(b) .........................................................................................................2

40 C.F.R. § 230.3(s)(3) (2008) .........................................................................................2

40 C.F.R. § 230.3(s)(7) (2020) .........................................................................................2

39 Fed. Reg. 12119 (Apr. 3, 1974) ...................................................................................2

80 Fed. Reg. 37054 (June 29, 2015) .................................................................................3

85 Fed. Reg. 22341 (2020) ...............................................................................................2

86 Fed. Reg. 2744 (Jan. 13, 2021) ...................................................................................5

Palm Beach County Zoning Ordinance 2005-002, Ex. O (2005) .....................................6

Parrillo, Nicholas R., *Federal Agency Guidance and the Power To Bind: An Empirical Study of Agencies and Industries*, 36 Yale J. on Reg. 165 (2019) ..........................3

## INTRODUCTION

Dr. Sedigheh Zolfaghari dedicated twenty-five years of her career as a pediatrician to caring for children and newborns. First Amended Complaint, Dkt. No. 25 ¶¶ 28–30. In 2002, she retired to a picturesque five-acre homestead in Lake Worth, Florida, living for more than twenty years on land she thought was all hers. Dkt. No. 25 ¶ 31. The Army Corps of Engineers ("the Corps") declared otherwise, seizing control of nearly half her property based on claims the U.S. Supreme Court has ruled illegal. Dkt. No. 25 ¶¶ 35–58.

The Corps currently asserts authority over Dr. Zolfaghari's property, not through the Corps' actual statutorily defined jurisdiction, but under permits entered into in 2002 and 2009. Dkt. No. 25 ¶ 57. This is important because, by the Corps' own admission, *see* Dkt. No. 25, Ex. 3 at 29, it has no basis for considering any portion of Dr. Zolfaghari's land to be within the Clean Water Act's ("CWA") grant of jurisdiction. The purported wetlands on Dr. Zolfaghari's property are in the interior of the parcel and lack a continuous surface connection to any plausibly jurisdictional water of the United States. *See* Dkt. No. 25 ¶¶ 33–34. This contravenes the Supreme Court's landmark decision in *Sackett v. EPA*, 598 U.S. 651 (2023), which rejected CWA jurisdiction over lands such as those at issue here.

This lawsuit challenges the Corps' unlawful assertions of authority over Dr. Zolfaghari's private property, raising claims under the Administrative Procedure Act ("APA"), the unconstitutional conditions doctrine, and equitable principles. Because the allegations raised in the Complaint are timely, ripe, and plausibly allege redressable violations of Dr. Zolfaghari's constitutional and contractual rights, the Motion to Dismiss should be denied.

## FACTS

### A.    Legal Background

#### 1.   Clean Water Act

In 1972, in response to growing concerns over the negative health effects of polluted drinking water, Congress enacted the Clean Water Act, 33 U.S.C. § 1251 *et seq.*, departing from nearly 200 years of practice vesting the regulation of water pollution "almost entirely" with the states. *Sackett*, 598 U.S. at 659. The act prohibits "the discharge of any pollutant" into "navigable waters," 33 U.S.C. §§ 1311(a), 1362(12)(A), and jointly empowers the Environmental Protection Agency ("EPA") and the Corps with its enforcement. *See* 33 U.S.C. §§ 1319(a), 1344(a).

1

Sensible of the traditional limits of federal power, Congress limited CWA jurisdiction to the "navigable waters" of the United States, defined as "the waters of the United States, including the territorial seas." 33 U.S.C. §§ 1251(a), 1362(7). The precise definition of what "waters of the United States" means, however, has been the subject of considerable controversy throughout the years. *See Sackett*, 598 U.S. at 663. While the EPA always asserted a broad definition that included even entirely intrastate waters, at first, the Corps kept to its traditional federal role of ensuring the navigability of America's interstate shipping lanes, asserting jurisdiction over only those navigable waters capable of use by the public for purposes of transportation or commerce. 39 Fed. Reg. 12119 (1974).

**2. Wetlands and Waters of the United States**

In 1977, Congress amended the CWA to allow states to apply to the EPA for permission to regulate certain discharges into "(1) any waters of the United States, (2) except for traditional navigable waters, (3) 'including wetlands adjacent thereto.'" *Sackett*, 598 U.S. at 675 (quoting 33 U.S.C. § 1344(g)(1)). Thus, while "wetlands are not included in 'traditional notions of waters,'" *id.* at 673, the Supreme Court has held that the statute as it now stands "presumes that certain wetlands constitute 'waters of the United States.'" *Id.* at 675–76.

Against this backdrop, the Corps' interpretation of its own authority under the CWA gradually expanded over the years, culminating in a 2008 rulemaking asserting authority over "[a]ll . . . waters" that "could affect interstate or foreign commerce," including "intrastate lakes, rivers, streams (including intermittent streams), mudflats, sandflats, wetlands, sloughs, prairie potholes, wet meadows, playa lakes, or natural ponds." 40 C.F.R. § 230.3(s)(3) (2008). The Corps also took advantage of Section 1344(g)(1)'s adjacent wetlands language to expand its authority over any wetland areas (broadly defined) that happen to be "bordering, contiguous, or neighboring" a covered water, including those wetlands that are physically separated from covered waters by natural or man-made barriers. 40 C.F.R. § 230.3(b), (s)(7), *amended by* 85 Fed. Reg. 22341 (2020).

The U.S. Supreme Court, while inclined at the time to defer to the agencies' interpretations, repeatedly expressed concern over the EPA and Corps' arrogation of power to themselves, attempting to cabin the worst excesses. *See United States v. Riverside Bayview Homes, Inc.*, 474 U.S. 121, 132–33, 135 (1985) (expressing concern over the Corps' expansive interpretation of the

CWA, but nevertheless deferring to the agency on where to draw the line); *Solid Waste Agency of N. Cook Cnty. v. U.S. Army Corps of Eng'rs*, 531 U.S. 159, 164, 168 (2001) (rejecting the migratory bird rule, which extended jurisdiction to any waters or wetlands that "are or would be used as habitat" by migratory birds or endangered species, holding that CWA jurisdiction does not extend "to ponds that are *not* adjacent to open water"). Despite the Court's reservations, however, the Corps and the EPA continued to seek opportunities to expand their CWA jurisdiction, largely through the increase in individualized determinations and promulgation of vague regulations, *see Sackett*, 598 U.S. at 667, eventually requiring the Supreme Court to step in again to rein in the agencies.

In *Rapanos v. United States*, 547 U.S. 715 (2006), the Court reversed a lower court decision holding that the CWA covered wetlands near ditches and drains that eventually emptied into navigable waters at least eleven miles away, but no opinion was able to win a Court majority. Following *Rapanos*, the EPA and the Corps "issued guidance documents that 'recognized larger grey areas and called for more fact-intensive individualized determinations in those grey areas.'" *Sackett*, 598 U.S. at 667 (quoting Nicholas R. Parrillo, *Federal Agency Guidance and the Power To Bind: An Empirical Study of Agencies and Industries*, 36 Yale J. on Reg. 165, 231 (2019)). This regulatory path culminated in the Corps asserting that "almost all waters and wetlands across the country theoretically could be subject to a case-specific jurisdictional determination." 80 Fed. Reg. 37054, 37056 (June 29, 2015).

### 4. *Sackett v. EPA*

This controversy over the extent of the agencies' jurisdiction under the CWA came to a head in *Sackett*. The Sacketts had purchased a piece of property in Idaho to build a home, which required backfill of dirt and rocks. The EPA then came in and asserted the property was a jurisdictional wetland and threatened the Sacketts with thousands of dollars of daily fines if they did not restore the site to its previous state. Only, the Sacketts' property did not include any waters of the United States, being located across a 30-foot-wide highway from an "unnamed tributary," which feeds into a non-navigable creek, which feeds into a navigable lake. *Sackett*, 598 U.S. at 662–63.

The Supreme Court refused to accept the EPA's (and, by extension, the Corps') broad interpretation of the agencies' jurisdiction, and reaffirmed that the government's authority to

regulate land under the CWA is limited to actual waters as traditionally conceived (i.e., oceans, lakes, rivers, and streams) and those adjacent wetlands with a "continuous surface connection" to actual waters, such that the wetland is "indistinguishably part of a body of water that itself constitutes 'waters' under the CWA." *Id.* at 676–78. The CWA does not extend—and has never extended—to wetlands that lack a continuous surface connection to waters of the United States.

Unfortunately, the Corps and the EPA seem to have decided, post-*Sackett*, to once again frustrate the Supreme Court's attempts to bring them into line with the text of the CWA.

## B.    Factual Background

Following a long and successful career as a pediatrician caring for children and newborns in New Jersey, Dr. Sedigheh Zolfaghari wanted to retire someplace warm, and purchased a picturesque five-acre homestead in Lake Worth, Florida, in 2002. Dkt. No. 25 ¶¶ 28–31. The property is roughly triangular, with a road along one side, an adjacent property along another, and an artificial canal along the third. Dkt. No. 25 ¶ 33. The interior of the property includes some areas of marshy soil that can be described as wet, but these areas of the property are separated from the canal by at least thirty feet of dry land with no continuous surface connection to the canal or any other body of water that could be construed as a water of the United States. Dkt. No. 25 ¶ 34. Even so, the Corps determined that "the majority of the lot" included jurisdictional wetlands under the CWA in a March 2000 jurisdictional determination requested by the property's prior owner. Dkt. No. 25 ¶ 35.

When Dr. Zolfaghari purchased the property, she was informed that it included jurisdictional wetlands, but the property came with a preexisting transferable Corps permit authorizing the construction of a single-family home and stating the planned construction complied with the nationwide permit then in effect.[1]  Dkt. No. 25 ¶¶ 37–38. The permit asserted that nearly

---

[1]  Under its CWA Section 404 authority, the Corps issues a series of Nationwide Permits ("NWPs") every five years (after which each NWP expires and must be amended or reissued). Each NWP provides a broad authorization for a certain category of CWA-regulated activity, setting basic contours within which regional and individualized permit decisions can be made. For example, NWP 29, reissued in 2021, applies to residential developments and authorizes the discharge of dredged or fill material "for the construction or expansion of a single residence, a multiple unit residential development, or a residential subdivision," while requiring individual permittees to "submit a pre-construction notification to the district engineer prior to commencing the activity." 86 Fed. Reg. 2744, 2861 (Jan. 13, 2021).

the entirety of Dr. Zolfaghari's property was made up of jurisdictional wetlands. Dkt. No. 25 ¶ 40. At the time, the Corps claimed jurisdiction over a very broad array of landlocked wetlands, as the Supreme Court had yet to clarify that wetlands must maintain a continuous surface connection to waters of the United States such that they are virtually indistinguishable from those waters.

After receiving a construction permit from Palm Beach County in 2003, Dr. Zolfaghari built her home and has lived in it as her primary residence ever since. Dkt. No. 25 ¶ 41. She built the home in accordance with the Corps' conditions that the prior owner agreed-to—recognizing she had no choice in the matter because otherwise the Corps could imprison and fine her for attempting to use the property without complying with those conditions. *See* 33 C.F.R. §§ 326.5 (describing availability of judicial action against violators of Section 404); 326.6 (describing availability of administrative penalties under Section 404); Dkt. No. 25 ¶ 42. She lived on the property for several years without any further interactions with the Corps. Dkt. No. 25 ¶ 42.

In 2008, Dr. Zolfaghari wished to build a guest house on the property for her son to stay in, and—recognizing the risk of fines or prison if she built without the supposedly-required permission of the Corps—she sought a new permit from the Corps to impact another half-acre of purported wetlands. Dkt. No. 25 ¶ 43. The Corps approved construction of the guest house but conditioned its approval on Dr. Zolfaghari agreeing to engage in certain mitigation activities, including returning two acres of purported wetland to its natural state and maintaining it in that state in perpetuity. Dkt. No. 25 ¶ 44 Dr. Zolfaghari built the guest house in compliance with the Corps' permit terms. Dkt. No. 25 ¶ 45.

In 2024, Dr. Zolfaghari wished to build a stable on the property to raise horses, an authorized use under the property's Agricultural-Rural zoning designation, *see* Palm Beach County Zoning Ordinance 2005-002, Ex. O (2005), and sought permission from the Corps to do so. Dkt. No. 25 ¶ 46. While conducting an inspection of the property related to this request on April 3, 2024, the Corps claims to have identified a violation of Dr. Zolfaghari's mitigation obligations under Special Permit Condition 3 of the 2008 permit. Dkt. No. 25 ¶ 47. In a May 23, 2024, letter, the Corps accused Dr. Zolfaghari of placing fill material in "jurisdictional wetlands" required to be maintained in their natural state in perpetuity by the permit, and threatened her with litigation and more than $64,000 in penalties unless she comes into compliance with their demands. Dkt. No. 25 ¶ 48.

After learning of the Supreme Court's decision in *Sackett*, Dr. Zolfaghari recognized that according to the decision *none* of the purported wetlands on her property satisfied the Court's test for determining the appropriate scope of CWA jurisdiction. Dkt. No. 25 ¶ 49. Simply put, no continuous surface connection to any body of water that could be plausibly described as a water of the United States exists that extends the Corps' jurisdiction over the canal to Dr. Zolfaghari's non-jurisdictional property.

Throughout the summer of 2024, Dr. Zolfaghari sought to raise her concerns about the non-applicability of the CWA to her property with local Corps officials. Dkt. No. 25 ¶ 51. In an email dated May 29, 2024, Corps compliance and enforcement officer Jonathan Pempek told Dr. Zolfaghari that "it appears that these wetlands may no longer fall under jurisdiction according to the current definition of [waters of the United States]." Dkt. No. 25 ¶ 52. On May 31, 2024, Dr. Zolfaghari sought a reverification of the jurisdictional status of her property from the Corps in the light of the Supreme Court's explication of the law in *Sackett*. Dkt. No. 25 ¶ 53. On July 22, she was told that a site visit had been conducted and that a jurisdictional determination would be completed, posted online, and sent to her. Dkt. No. 25 ¶ 54. To the best of Dr. Zolfaghari's knowledge, no such jurisdictional determination was ever produced or published. Dkt. No. 25 ¶ 55.

What Dr. Zolfaghari received instead was a letter from the Chief of the Corps' Palm Beach Gardens Section dated February 21, 2025, explaining that the Corps would not conduct a jurisdictional determination for the property, and asserting that Dr. Zolfaghari's permit provided all the authority the Corps required, "[r]egardless of [the land's] jurisdictional status." Dkt, No. 25 ¶¶ 56–57. The Corps told Dr. Zolfaghari that it may consider modifying the terms of her permit, should she apply for it, but that any modification would still require a mitigation plan to offset the impacts of construction. Dkt. No. 25 ¶ 58. In other words, the Corps not only illegally asserts authority over her property, it asserts that the permits it issued are contracts that are perpetually binding regardless of their underlying legality.

On July 7, 2025, Dr. Zolfaghari sued, asserting Administrative Procedure Act ("APA"), unconstitutional conditions, and contract claims against the Corps. The Corps moved to dismiss, raising arguments that her claims are time-barred and unripe. While the Corps' motion was pending, Dr. Zolfaghari sought leave to amend her Complaint to remove Claims IV, V, and VI, which this Court granted on October 8, 2025. Dkt. No. 24. Dr. Zolfaghari filed her First Amended

Complaint on October 8, 2025, Dkt. No. 25, and the Corps moved to dismiss on December 2, 2025.
Dkt. No. 32.

**STANDARD OF REVIEW**

When reviewing a motion to dismiss, "a court must view the complaint in the light most favorable to the plaintiff and accept the plaintiff's well-pleaded facts as true." *Gibson v. Lynn Univ., Inc.*, 504 F. Supp. 3d 1335, 1338 (S.D. Fla. 2020) (quoting *Hunt v. Aimco Properties, L.P.*, 814 F.3d 1213, 1221 (11th Cir. 2016)). Complaints do "not need detailed factual allegations" to survive a motion to dismiss, but "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). For the purposes of a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6), the court's analysis is generally restricted to the four corners of the complaint, as well as any materials incorporated into the complaint by reference and any matters of which the court may take judicial notice. *Id.*

For the purposes of a motion to dismiss for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1), it depends on whether the motion raises a "factual" or a "facial" challenge to the complaint. *McElmurray v. Consol. Gov't of Augusta-Richmond Cnty.*, 501 F.3d 1244, 1251 (11th Cir. 2007). Under a facial challenge, "the plaintiff is left with safeguards similar to those retained when a Rule 12(b)(6) motion to dismiss for failure to state a claim is raised. Accordingly, the court must consider the allegations in the plaintiff's complaint as true." *Id.* (quoting *Williamson v. Tucker*, 645 F.2d 404, 412 (5th Cir. 1981)).

Factual challenges, by contrast, "challenge 'the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings, such as testimony and affidavits are considered.'" *Id.* (quoting *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990)). The Corps states that "[f]or the purposes of this Motion to Dismiss, Defendants accept Plaintiff's factual allegations as pleaded," Motion to Dismiss, Dkt. No. 32 at 9 n.1, indicating the Motion should be construed as facial and all well-pleaded factual allegations should be viewed in the light most favorable to Plaintiff.

7

**ARGUMENT**

I.      **Plaintiff's APA Claims Are Timely**

Since the APA does not include a dedicated statute of limitations, the general six-year limitations period for civil claims against the federal government found in 28 U.S.C. § 2401(a) applies. *Corner Post, Inc. v. Bd. of Governors of Fed. Reserve Sys.*, 603 U.S. 799, 808 (2024). This statute of limitations "embodies the plaintiff-centric traditional rule that a statute of limitations begins to run only when the plaintiff has a complete and present cause of action," i.e., once the plaintiff knows or should know they have been injured by final agency action. *Id.* at 812–13.

The APA claims Dr. Zolfaghari raises in the first two counts of her Complaint fall comfortably within this six-year limitation period. The Corps' refusal to perform a jurisdictional determination after the Supreme Court's clarification in *Sackett* that only wetlands containing a "continuous surface connection" that are "indistinguishably part of a body of water that itself constitutes 'waters' under the CWA" fall within the CWA's jurisdiction, *Sackett*, 598 U.S. at 676, (an action for which no avenue for administrative appeal exists)[2] occurred in 2025. Its imposition of mitigation requirements and threats of enforcement action against Plaintiff in response to Dr. Zolfaghari's desire to construct horse stables on her property occurred in 2024. The letter from the Chief of the Palm Beach Gardens section of the Corps told Dr. Zolfaghari in no uncertain terms that the Corps had jurisdiction of her property because of the 2008 permit, and that the Corps intended to enforce it even though *Sackett* rendered that permit void ab initio. Dkt. No. 25 ¶ 57. These arbitrary and unlawful assertions of jurisdiction that Dr. Zolfaghari is requesting this Court to set aside took place within the six-year statute of limitations laid out by Section 2401(a). And while Dr. Zolfaghari did enter into the initial permits at issue more than six years ago, she did not—and could not—become aware of their illegality until the Supreme Court handed down its decision in *Sackett* in 2023.

Thus, any claim by the Corps that Dr. Zolfaghari should have acted in 2008 or afterward (pre-*Sackett*) fails to acknowledge the law as applied to these facts. Before *Sackett*, Dr. Zolfaghari was controlled by the permit. Afterward, she should not have been, and that is why she asked for the Corps to let her move forward no longer subject to the 2008 permit. It was the Corps' refusal

---

[2]  *See* 33 C.F.R. § 331.2 (Corps regulation defining an "appealable action" as "an approved JD [jurisdictional determination], a permit denial, or a declined permit").

in 2024 to recognize the implications of *Sackett* for Dr. Zolfaghari's property that set the statute of limitations' clock running, not the original 2008 permit.

### A.  The Acts Challenged Are Final Agency Actions Under Section 704 of the APA

Section 704 of the APA grants the federal district courts jurisdiction to review the legality of only government actions that are considered "final agency actions." 5 U.S.C. § 704. As a general matter, for an action to be considered "final," it must satisfy two conditions: "First, the action must mark the consummation of the agency's decisionmaking process—it must not be of a merely tentative or interlocutory nature. And second, the action must be one by which rights or obligations have been determined, or from which legal consequences will flow." *Bennett v. Spear*, 520 U.S. 154, 177–78 (1997) (internal quotations and citations omitted). The chief question is whether the agency's actions carried "direct and appreciable legal consequences" or served "more like a tentative recommendation than a final and binding determination." *Id.* at 178 (quoting *Franklin v. Massachusetts*, 505 U.S. 788, 798 (1992)). Further, the Corps' repeated use of mandatory language in describing what Dr. Zolfaghari "must" do to remain free of legal and financial penalties, *see* Dkt. No. 25, Ex. 3 at 32, also weighs in favor of considering the Corps' action final. *See Megladon, Inc. v. Vill. of Pinecrest*, 661 F. Supp. 3d 1214, 1232–34 (S.D. Fla. 2023) (Court did not think it was "going out on a limb by saying that" an email from planning director employing "language of an unmistakably mandatory character, requiring that certain procedures 'shall,' 'will,' or 'must' be employed" "sounds a lot like a final decision.").

If it is difficult to describe the Corps' actions here as the consummation of the agency's decision-making process, it is only because the Corps elected not to engage in one. Dr. Zolfaghari sought a reverification of the jurisdictional status of her property, and if the Corps had conducted one, she could have raised her objections through the Corps' ordinary administrative appeal process. Instead, the Corps boldly asserted the scope of its statutorily conferred jurisdiction was irrelevant and threatened Dr. Zolfaghari with legal action and financial penalties should she fail to comply with the illegitimate permits' terms. Rather than provide Dr. Zolfaghari an opportunity to administratively challenge the jurisdictional basis for her permits, the Corps chose to move forward with enforcement, imposing "direct and appreciable legal consequences" on her for which judicial review provides the only remedy. This Court should not allow the fact that the Corps' unconstitutional agglomeration of power is a longstanding problem to shield the Corps from

9

judicial scrutiny for the actions it has taken since 2024. *See National Parks Conservation Ass'n v. Norton*, 324 F.3d 1229, 1239 (11th Cir. 2003) ("[A]n administrative agency cannot legitimately evade judicial review forever by continually postponing any consequence-laden action and then challenging federal jurisdiction on 'final agency action' grounds.").

**B. Assuming Arguendo That Plaintiff Was Injured in 2004 and 2009, Equitable Principles Require the Statute of Limitations Be Tolled Until Plaintiff Reasonably Became Aware of It Following the *Sackett* Decision in 2023**

Even if Dr. Zolfaghari's APA claims concern injuries that occurred no later than 2009 (per the Government's argument), the circumstances of this case require the tolling of the statute of limitations. Under the applicable statute of limitations found in 28 U.S.C. § 2401(a), "a claim accrues 'when the plaintiff either knew, or in the exercise of reasonable diligence should have known, that [he or she] had a claim." *McCoy v. Dep't of Educ.*, No. 8:23-cv-1975, 2024 WL 3520709, at *4 (M.D. Fla. July 24, 2024) (quoting *Izaak Walton League of Am., Inc. v. Kimbell*, 558 F.3d 751, 759 (8th Cir. 2009)). Since a reasonably prudent person would not have been aware of the invalidity of Dr. Zolfaghari's permits until the Supreme Court issued its opinion in *Sackett* in 2023, her claims did not begin to accrue until that point and are therefore timely.

Furthermore, "[a]s a general matter, equitable tolling pauses the running of, or 'tolls,' a statute of limitations when a litigant has pursued his rights diligently but some extraordinary circumstance prevents him from bringing a timely action." *Lozano v. Montoya Alvarez*, 572 U.S. 1, 10 (2014). The doctrine "is a traditional feature of American jurisprudence and a background principle against which Congress drafts limitations periods," and courts "presume that federal statutes of limitations are subject to equitable tolling." *Arellano v. McDonough*, 598 U.S. 1, 6 (2023) (quoting *Boechler, P.C. v. Comm'r*, 596 U.S. 199, 208–09 (2022)). The doctrine applies in cases involving the statute of limitations found in 28 U.S.C. § 2401(a), and courts have consistently held similarly worded time-bars in other statutes non-jurisdictional and subject to equitable tolling. *See, e.g.*, *United States v. Wong*, 575 U.S. 402 (2015) (two-year statute of limitations found in 28 U.S.C. § 2401(b), which is similar but more strongly worded, including the language "forever barred," is non-jurisdictional and subject to equitable tolling); *Wilkins v. United States*, 598 U.S. 152, 158–59 (2023) (finding the 12-year statute of limitations found in 28 U.S.C. § 2409a(g), which is worded nearly identically to that found in 28 U.S.C. § 2401(a), to be a "mundane" claims processing rule that is not jurisdictional).

10

## II.    Dr. Zolfaghari's Unconstitutional Conditions Claim Is Timely

Count Three alleges that the Corps has placed unconstitutional conditions on Dr. Zolfaghari's lawful use of her land. The unconstitutional conditions doctrine is implicit in the Takings Clause of the Fifth Amendment and prohibits governments from requiring property owners to relinquish property rights as a condition of receiving a land-use permit, unless the government can demonstrate that the demand bears an "essential nexus" and "rough proportionality" to the alleged impacts of the proposed land use. *Koontz v. St. Johns River Water Mgmt. Dist.*, 570 U.S. 595, 606 (2013) ("Under *Nollan* and *Dolan* the government may choose whether and how a permit applicant is required to mitigate the impacts of a proposed development, but it may not leverage its legitimate interest in mitigation to pursue government ends that lack an essential nexus and rough proportionality to those impacts."). Under the unconstitutional conditions doctrine, the *government's demand itself* causes an injury-in-fact, and the government need not actually consummate its regulations with a taking. *See Megladon*, 661 F. Supp. 3d at 1233 (noting that, at the motion to dismiss stage, the unconstitutional conditions doctrine "requires the Plaintiff to aver, not the *denial* of a permit, but the imposition of an unconstitutional condition").

The "essential nexus" asks whether a permit condition directly relates to the proposed development's impact. *Nollan v. California Coastal Comm'n*, 483 U.S. 825, 837–42 (1987) (finding no nexus between a demand for a public beach access easement and stated interest in "visual access" to the ocean). Without that link, the condition is little more than a covert taking. The "rough proportionality" test requires an individualized determination that the condition is not excessive in light of the development's anticipated effects, and the government must justify the exaction with more than conclusory assertions. *Dolan v. City of Tigard*, 512 U.S. 374, 391–95 (1994) (holding that a demand for a land dedication and pedestrian path as conditions of permit approval for expanding a hardware store failed to demonstrate rough proportionality to the projected impact on flood control and traffic).

The exactions doctrine thus prevents the government from using the permitting process as leverage to extract property rights or financial contributions that are excessive or unrelated to the project's actual impacts. Dr. Zolfaghari has alleged that the Corps' enforcement of permit terms over non-jurisdictional land fails both the essential nexus and rough proportionality prongs of the *Nollan*/*Dolan* test. The Corps did not make the required "individualized determination that the

11

[permit demand] is related both in nature and extent to the impact of the proposed development." *Id.* at 391.

Dr. Zolfaghari alleged that the onerous mitigation terms and threatened penalties lack an "essential nexus" because the Corps lacks any statutory authority to dictate how Dr. Zolfaghari chooses to use her non-jurisdictional property, with no federally protected waters or wetlands impacted by Dr. Zolfaghari's existing or planned use. The Corps' mandate extends only over those wetlands that are indistinguishable from traditional waters of the United States, *Sackett*, 598 U.S. at 676, and it has no interest whatsoever in the maintenance of wetlands unconnected to such waters.[3] *See* 33 U.S.C. § 1251(b) (explaining that appropriate jurisdictional authority is a prerequisite of the Corps regulating property or imposing permit terms, and absent a significant nexus between a wetland and navigable waters, jurisdiction under the CWA is lacking.) *See Georgia v. Wheeler*, 418 F. Supp. 3d 1336, 1353 (S.D. Ga. 2019). Because there is no essential nexus between the projected impact of constructing a stable (or house or guest house) on Dr. Zolfaghari's land (i.e., no jurisdictional wetlands are impacted) and the exaction demanded (e.g., mitigation costs, refraining from making use of large portions of her property), those exactions constitute an unconstitutional condition in violation of the Fifth Amendment.

Further, the "rough proportionality" test requires an individualized determination that the condition is not excessive in light of the development's anticipated effects, and the government must justify the exaction with more than conclusory assertions. *Dolan*, 512 U.S. at 391–95 (holding that a demand for a land dedication and pedestrian path as conditions on permit approval for expanding a hardware store failed to demonstrate rough proportionality to the projected impact on flood control and traffic). The Corps has not conducted such an investigation, and has indeed refused to conduct one, asserting that its authority under the permits exists independent of any actual impact Dr. Zolfaghari's planned development may or may not have on waters within its jurisdiction. If the Corps had conducted such an investigation, it would have been clear that the

---

[3] While Section 404 does require the Corps to conduct a "public interest review" of potential permits by the Corps that may consider the impacts to non-jurisdictional lands in addition to jurisdictional waters, *see* 33 C.F.R. § 320.4 (1987), it strains credulity to claim that there could be a legitimate public interest in the regulation of land entirely outside the Corps' statutory jurisdiction. Jurisdiction is a threshold question that applies before and is analyzed separately to questions regarding the balancing of interests. *See id.*

exactions placed upon Dr. Zolfaghari are not proportional to any interest the Corps may have in the regulation of her property. The rough proportionality test requires that "the exaction would substantially advance the same government interest that would furnish a valid ground for denial of the permit." *Lingle v. Chevron U.S.A., Inc.*, 544 U.S. 528, 547 (2005) (citing *Nollan*, 483 U.S. at 834–37). No one denies the Corps' legitimate interest in "restor[ing] and maintain[ing] the chemical, physical, and biological integrity of the Nation's waters," 33 U.S.C. § 1251(a), but this interest cannot be substantially advanced by requiring private property unconnected from any water of the United States within the Corps' legal jurisdiction to be maintained in its natural state in perpetuity. And since no valid grounds exist for requiring Dr. Zolfaghari to obtain a permit at all—let alone for denying one—therefore no valid grounds can exist to condition the grant of such a permit.

There can be no proportionality if the government lacks the authority to act in the first place; the outcome of a balancing of interests is foregone when one of the two interests being balanced rounds out to zero. The terms the Corps has pressed upon Dr. Zolfaghari are unsupported by law, excessive, and unrelated to any impact to federally protected wetlands.

## A. Plaintiff's Unconstitutional Conditions Claims Are Ripe and Within the Statute of Limitations

Unconstitutional conditions claims, while based on the Takings Clause of the Fifth Amendment, are not traditional takings claims, and are analyzed under their own independent doctrines. *See Koontz*, 570 U.S. at 608–09 ("Where the permit is denied and the condition is never imposed, nothing has been taken. While the unconstitutional conditions doctrine recognizes that this *burdens* a constitutional right, the Fifth Amendment mandates a particular *remedy*—just compensation—only for takings."); *Hillcrest Property, LLP v. Pasco Cnty.*, 915 F.3d 1292, 1299 (11th Cir. 2019) ("*Koontz* makes clear that an unconstitutional-conditions claim is its own constitutional cause of action that is 'predicated' on some other enumerated constitutional right— in Koontz's case 'predicated on the Takings Clause.'") (quoting *Koontz*, 570 U.S. at 610).

Of immediate importance here, the ripeness concerns at play differ from those in traditional takings cases substantially. Unlike traditional takings claims, which accrue only after the government has taken property for public use, the mere conditioning of a permit approval on a property owner forfeiting a constitutional right supports a claim under the unconstitutional

13

conditions doctrine. *See Koontz*, 570 U.S. at 606 ("[W]e have recognized that regardless of whether the government ultimately succeeds in pressuring someone into forfeiting a constitutional right, the unconstitutional conditions doctrine forbids burdening the Constitution's enumerated rights by coercively withholding benefits from those who exercise them."). The takings decisions the Corps cites to such as *Penn Central Transportation Co. v. New York City*, 438 U.S. 104 (1978), *Riverside Bayview*, 474 U.S. 121, and *Tabb Lakes, Ltd. v. United States*, 10 F.3d 796 (Fed. Cir. 1993), compelling though they may be within their own precedential scope, are therefore inapposite.

In the land-use context, unconstitutional conditions claims ripen once "'the government has adopted its final position' on the application of the relevant regulations." *Megladon*, 661 F. Supp. 3d at 1234 (citing *Pakdel v. City & Cnty. of S.F.*, 594 U.S. 474, 480 (2021)); *see also id.* ("[T]he Supreme Court has made clear that the unconstitutional-conditions doctrine isn't subject to an exhaustion requirement."). "To assert a plausible unconstitutional-conditions claim . . . a plaintiff need only allege that there's no question . . . about how the regulations [apply] to the particular land in question." *Id.* (cleaned up).

Here, the Corps has imposed specific unconstitutional conditions Dr. Zolfaghari must comply with in order to use her property, making its position unmistakable. Specifically, the Corps has conditioned Dr. Zolfaghari's otherwise-authorized construction of a guest house and horse stable on her property on Dr. Zolfaghari ensuring that 2.0 acres of her land are "enhanced, restored, and preserved . . . and maintained in their natural state in perpetuity." Dkt. No. 25, Ex. 3 at 28. The Corps further threatened to suspend or revoke the permit and up to $64,619 in penalties should Dr. Zolfaghari fail to comply with the conditions placed upon her. Dkt. No. 25 at 23. This Court has found threats and permit conditions communicated to property owners in this way sufficiently final to support an unconstitutional conditions claim. *See Megladon*, 661 F. Supp. 3d at 1232–34 (Court did not think it was "going out on a limb by saying that" an email from planning director employing "language of an unmistakably mandatory character, requiring that certain procedures 'shall,' 'will,' or 'must' be employed" "sounds a lot like a final decision"). *See also Carpinteria Valley Farms, Ltd. v. Cnty. of Santa Barbara*, 344 F.3d 822, 830 (9th Cir. 2003) (plaintiff "did not have to await further action by the County" illegally denying his permit when county "threatened him with a fine of $25,000 per day" if he moved forward without a permit). Here, the Corps has made

14

it clear what Dr. Zolfaghari "must" do if she wants to build her stable, Dkt. No. 25, Ex. 1 at 23, Ex. 3 at 32–33, and has made it equally clear what the consequences will be if she fails to do what she's told. This is sufficiently final, particularly at the motion-to-dismiss stage where the allegations must be read in the light most favorable to the plaintiff, *see Megladon*, 661 F. Supp. 3d at 1233, to ripen Dr. Zolfaghari's unconstitutional conditions claim.

Moreover, the possibility of obtaining a discretionary modification to Dr. Zolfaghari's permit (that would still unequivocally require the permanent rewilding and mitigation of large portions of her property) does not provide Dr. Zolfaghari a meaningful avenue for seeking relief. Whatever administrative appeal process may be available does not provide Plaintiff an opportunity to challenge the underlying legality of her permit or the Corps' assertion of jurisdiction over her property. There is no jurisdictional determination for Dr. Zolfaghari to appeal because the Corps refused to produce one. And there is no possible outcome of the "ongoing" administrative processes that does not result in the continued imposition of unconstitutional conditions on Dr. Zolfaghari for the ordinary use of her land.

Nor is Dr. Zolfaghari's unconstitutional conditions claim (also subject to the six-year statute of limitations found in 28 U.S.C. § 2401(a)) barred by the statute of limitations, for the same reasons her APA claims are not time-barred. The argument is even stronger here, however, because unconstitutional conditions claims are not shackled to a discrete final agency decision in the same way APA claims are. At least some of the unconstitutional conditions placed upon Dr. Zolfaghari's ordinary and lawful use of her property were imposed in 2024 and 2025 and constitute ongoing injuries affecting her to this day. The Corps has continuously and consistently restricted Dr. Zolfaghari's constitutional right to her property, without proper legal authorization, for the entire period she has owned the property.

## B. Unconstitutional Conditions Claims Do Not Require a Deeding Over or Complete Taking of Property

The Corps' argument that the unconstitutional conditions doctrine applies only to situations in which the government has required the plaintiff to "deed portions of the property to the government," Dkt. No. 32 at 19, is also mistaken. It is true that the doctrine does not prohibit mere limitations on use of the sort governments lawfully impose every day, but nor does it require that the government's action amount to a full taking or formal deeding of property. As this Court stated

15

in *Megladon*, "[t]he whole point of the unconstitutional-conditions doctrine is that it 'forbids burdening the Constitution's enumerated rights . . . *regardless* of whether the government ultimately succeeds in pressuring someone into forfeiting a constitutional right[.]'" *Megladon*, 661 F. Supp. 3d at 1239 (quoting *Koontz*, 570 U.S. at 606). "The doctrine, in other words, specifically applies in situations like ours—where *nothing* has been taken." *Id.* While the unconstitutional condition at issue in *Dolan* may have included the deeding over of property in return for permit approval, that is in no way the only form unconstitutional conditions take. The Supreme Court has stated that even exactions that involve only the payment of money and do not involve the transfer of an interest in real property are unconstitutional if they fail the essential nexus and proportionality tests. *See Koontz*, 570 U.S. at 612 (finding so-called "in lieu of" fees or "monetary exactions" must satisfy the same essential nexus and rough proportionality tests applied in *Nollan*/*Dolan*); *Sheetz v. Cnty. of El Dorado*, 601 U.S. 267, 276 (2024) (The essential nexus and rough proportionality test "applies regardless of whether the condition requires the landowner to relinquish property or requires her to pay a 'monetary exactio[n]' instead of relinquishing the property.") (quoting *Koontz*, 570 U.S. at 612–15). In this light, the Corps' weak attempt to use pre-*Megladon*, pre-*Koontz* district court precedent from another circuit to support its argument that exactions caselaw should not apply here, ignoring the substantial ways in which the Supreme Court has expanded the applicability of *Nollan* and *Dolan* in recent years, is unpersuasive. *See* ECF No. 32 at 16–17 n.9 (citing *Kamaole Pointe Dev. LP v. Cnty. of Maui*, 573 F. Supp. 2d 1354, 1366 (D. Haw. 2008)).

Here, Dr. Zolfaghari must refrain from developing—indeed, must affirmatively re-wild and maintain in perpetuity—a substantial portion of her non-jurisdictional property as a condition of developing a different non-jurisdictional part of her property. If anything, the fact that the Corps has not actually taken Dr. Zolfaghari's property leaves her in an even worse situation: if the Corps had simply taken the property, she would have been owed compensation, but under her current circumstances as dictated by the Corps, she remains legally and financially responsible for land she cannot use. This sort of extortionate demand, completely unrelated to any lawful interest of the Corps, is a textbook example of the sort of unconstitutional condition the Supreme Court has repeatedly attempted to prohibit.

## C.  The Tucker Act Does Not Defeat This Court's Jurisdiction

The Tucker Act vests jurisdiction over monetary claims against the federal government in the Court of Federal Claims, 28 U.S.C. § 1491, with concurrent jurisdiction in the federal district courts for claims less than $10,000. 28 U.S.C. § 1346 ("Little Tucker Act"). Despite the Corps' protestations, however, the Tucker Act does not apply to this suit, and as such Dr. Zolfaghari has not invoked the Tucker Act to establish this Court's jurisdiction. As explained above, while unconstitutional conditions claims derive from the Fifth Amendment (like takings claims), they are not the same as takings claims. *See* Part II, *supra*, at 11. Federal courts routinely hear unconstitutional conditions claims against the federal government without any invocation of the Tucker Act whatsoever. *See, e.g.*, *Stavrianoudakis v. U.S. Fish and Wildlife Service*, 108 F.4th 1128, 1139–41 (9th Cir. 2024) (approving unconstitutional conditions claim with regard to a federal agency's requiring waiver of Fourth Amendment rights as condition of receiving falconry permit, while denying claim as unripe); *United States v. Jackson*, 390 U.S. 570, 581–82 (1968) (overturning federal conviction under Federal Kidnapping Act on unconstitutional conditions theory).

Nor does Dr. Zolfaghari's request for nominal damages bring this suit under the ambit of the Tucker Act. "Nominal damages exist as a purely 'symbolic vindication of [a] constitutional right.'" *Cummings v. Connell*, 402 F.3d 936, 946 (9th Cir. 2005) (quoting *Schneider v. Cnty. of San Diego*, 285 F.3d 784, 794 (9th Cir. 2002)). In practice, nominal damages are more like declaratory relief than compensatory (or punitive) damages. They are damages "in name only and customarily are defined as a mere token or 'trifling.'" *Id.* at 943 (quoting *Carey v. Piphus*, 435 U.S. 247, 267 (1978); *Magnett v. Pelletier*, 488 F.2d 33, 35 (1st Cir. 1973) (per curiam)). Dr. Zolfaghari does not seek money damages from the government, and does not seek to draw upon the public fisc to effectuate her remedy, rendering this suit appropriate for this Court to review and unsuitable for the Court of Federal Claims.

## CONCLUSION

For the foregoing reasons, Dr. Zolfaghari respectfully asks this Court to deny the Corps' Motion to Dismiss as to all three claims brought under both the APA and the unconstitutional conditions doctrine.

DATED: December 18, 2025.

Respectfully submitted,

David C. McDonald*  
Frank D. Garrison*  
PACIFIC LEGAL FOUNDATION  
3100 Clarendon Blvd., Ste. 1000  
Arlington, VA 22201  
Ph: (202) 888-6881  
Email: dmcdonald@pacificlegal.org  
      fgarrison@pacificlegal.org  
*admitted pro hac vice*

/s/ Mark Miller  
Mark Miller  
Fla. Bar No. 0094961  
PACIFIC LEGAL FOUNDATION  
4440 PGA Blvd., Ste. 307  
Palm Beach Gardens, FL 33410  
Ph: (561) 691-5000  
Email: mark@pacificlegal.org

*Attorneys for Plaintiff Sedigheh Zolfaghari*

18